UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUNDOWN ENERGY, LP** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-4354** |
| **STEVEN HALLER, MARY TABONY MEYERS, SUSAN ALICE TABONY BECNEL, LAWRENCE M. TABONY, JR. and FLASH GAS AND OIL SOUTHWEST, INC.** | **SECTION "K"(3)** |

## ORDER AND OPINION

Before the Court are the "Cross Motion to Enforce Settlement" filed on behalf of plaintiff Sundown Energy, LP ("Sundown") (Doc. 195) and the "Motion to Enforce Settlement" filed on behalf of defendant Steven G. Haller and Flash Gas and Oil Southwest, Inc. (collectively "Haller")(Doc. 197). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, grants both motions in part and denies both motions in part, as set forth below.

I.   BACKGROUND

The Order and Opinion which denied the "Motion for Partial Summary Judgment" filed on behalf of Haller and the "Motion in Limine filed on behalf of plaintiff Sundown (Doc. 158) set forth the general background of this suit. The following additional facts are relevant for consideration of these motions. On the day scheduled for the trial in this matter to commence, the parties advised the Court that they had reached a settlement of all claims in this suit as well as a related state court suit entitled *Perry Point Inc. v. Steven G. Haller*, No. 58-976 pending in the 25th Judicial District Court for the Parish of Placquemines. The parties placed the general terms of the settlement on the

record and filed into the record a plat of the agreed upon right-of-way to be granted to Sundown by Haller. The parties requested that the Court retain jurisdiction over the matter to adjudicate any disputes that arose from the enforcement of the agreement or the interpretation of the actual settlement documents. The Court agreed to do so. Doc. 192, p. 11. In the course of drafting the actual settlement documents, a number of disputes arose. To obtain a resolution of those disputes, the parties filed cross motions to enforce the settlement.

The parties agree, and the Court concurs, that the settlement, as stated on the record, is a valid settlement agreement under Louisiana law. The disputes between the parties do not affect the validity of the settlement agreement. The Court will in turn address each of the disputes remaining between the parties.[1]

II. The Auction

The settlement provided that "[w]ithin 30 days of executing the documents, we would – the parties would bid against each other in a mandatory buy/sell to purchase the other's co-ownership interest in Tracts 1 and 2 with the high bidder paying its bid price to purchase the other's interest in both tracts." Doc. 195-2, Ex. A, p. 9. The agreement does not provide any details concerning how the proceeds of the auction shall be disbursed. The parties disagree as to whether the proceeds of the winning bid will be paid to the parties in proportion to their ownership interests in the two tracts of land or whether the entirety of the proceeds will be paid to the low bidder for its interest

---

[1] The memoranda filed by the parties indicate that the disputes concerning the specific location of the right-of-way and whether Mr. Haller has the right to review the estimates for the construction of the road have now been amicably resolved. The Court further notes, that based on the memoranda filed in connection with the motions, the parties now agree that the entities submitting bids for the construction of the road must be entities that are not affiliated with or related to Sundown, Perry Point, Inc. or any of their employees.

in the property.

Magistrate Judge Daniel E. Knowles, III shall conduct the auction on May 17, 2012 at 9:30 a.m. He shall have discretion to conduct the auction and divide the proceeds as proposed by either Sundown or Haller. Sundown proposes that the proceeds of the auction shall be paid to the low bidder to purchase that party's interest in the disputed property. Haller, on the other hand, suggests that the proceeds of the auction be disbursed as provided in Civil Code article 811 for auctions held in connection with a partition by licitation, i.e., "the proceeds shall be distributed to the co-owners in proportion to their shares."

Haller represents that "[d]efining the percentage of ownership that each party has is a very simple calculation that could be done from Sundown's own documents detailing ownership in the Bohemia Spillway, and confirmed by recorded public documents." Doc. 199, p. 5-6. This Court prefers that the auction be conducted as proposed by Haller if there is no dispute as to the ownership interests of the various parties. However, if the parties in good faith are unable to agree upon their respective ownership interests, then the auction proceeds shall be allocated as proposed by Sundown.

III. Location and Duration of the Right of Way

As previously stated, the dispute concerning the location of the right-of-way, particularly the location around the slab and the storage shed, has now been resolved and that the present route as staked out by Sundown is acceptable to Haller.

The parties disagree concerning the duration of the temporary right-of-way on the road next to Mr. Haller's camp. Sundown asserts that it will have the right to use that temporary right-of-way until "we have our road in place in essence from A to Y." Haller, on the other hand, seeks to limit

the duration of the temporary right -of- way to a period of six months. The agreement makes clear that the right- of- way on the road next to Mr. Haller's camp cannot be exercised in perpetuity but rather is a temporary right. Although that specific right- of- way is temporary, the Court concludes that Sundown shall have the right to use it for a reasonable period of time. Given the disagreement between the parties as to the duration of that temporary right-of-way, the Court orders that the temporary right of way shall be in effect for a period of nine months. However, in the event that construction of the road is delayed by events beyond the control of Sundown, it may petition the Court for additional time to use the temporary right-of- way.

An issue has also developed concerning Sundown's right to use the dock after completion of the road in the event that Mr. Haller wins the auction for Tract 1 and Tract 2. It is undisputed that the dock is on Tract 1 or Tract 2. Although the settlement agreement itself has not provided direction on many of the issues between the parties, on this issue, the settlement agreement itself resolves the dispute. At the time the parties placed the settlement on the record, the following colloquy occurred:

> Mr. McGuire: What we're going to do is, first of all, is lay out how we're going to agree that, in the event, whoever may ultimately own Tracts 1 and 2, the route that Sundown would take both to its facility, and **if it acquires the dock** back to the dock.
>
> . . . .
>
> Mr. McGuire: Until the construction is completed . . . Sundown will have a temporary right-of-way from Mr. Haller using the road that goes right by his camp to get to the dock.
>
> The Court: I understand.
>
> Mr. McGuire: Once we have our road in place in essence from A to Y, then we would cease using the road by his docks.

>The Court: I understand.
>
>Mr. McEachin: We might want to note here, Judge, once that road from A to Y is in place, they're going to continue going down river in a direction from Y to C, but they will still . . . they will still, **if they acquire** Tracts 1 and 2, will come back up the high road to access their dock.
>
>The Court: I understand.

Doc. 192,  p. 4, 8 (emphasis added).

Thus, the record indicates that if Sundown acquires Tracts 1 and 2 it would have access to the dock.  However, there is no provision in the settlement agreement for Sundown to lease the dock in the event that Mr. Haller prevails in the auction of Tracts 1 and 2.  Considering the absence of any provisions in the settlement agreement addressing Sundown's lease of the dock in the event it is not the high bidder for Tracts 1 and 2, the Court concludes that the settlement agreement does not provide for Sundown's use of the dock if Mr. Haller is the successful bidder in the auction.

IV.  Issues Involving  the Recreational Lease

    A.  Fuel Storage and Hunting

The settlement agreement provides for Sundown to grant Steven G. Haller a 99 year recreation lease for "the same area that was covered by what was called part A of the 1939 surface lease as well as the dock and canal for its recreational purposes."  Doc. 192, p. 10-11.  The agreement does not however define the scope of the recreational lease.  The parties disagree about whether hunting is permitted under the recreational lease and whether Mr. Haller can store fuel on the property subject to the recreational lease.

Considering Mr. Haller's prior use of the fuel tank and underground fuel line on the property which is subject to the recreational use, the Court concludes that the Mr. Haller can continue to store

fuel in the fuel storage tank on the property subject to the recreational use and can and use the fuel line attached to that tank. With respect to whether hunting is permitted under the recreational lease, the Court notes that the record of this litigation reflects that hunting is an activity which Mr. Haller has previously engaged in on his property and that hunting is an activity which is important to him. Given that evidence in the record, the Court concludes that hunting is within the scope of the recreational lease.

Sound business practice dictates that if Mr. Haller intends to exercise his right to hunt on the property covered by the recreational lease, he must obtain general liability insurance coverage in the amount of $2,000,000.00 to cover the leased premises and his hunting activities and those of his invitees. Sound business practice also mandates that Sundown obtain general liability insurance coverage in the amount of $2,000,000.00 to cover its activities on the property covered by the recreational lease.

B. Exclusivity of Recreation Lease

With respect to recreation leases in Louisiana, it is typical and customary that the lease contains a provision reserving to the lessor the right to lease the property for oil, gas, and mineral exploration. Therefore, Sundown can, lease, or use, the property subject to the recreation lease for the exploration of oil, gas, and minerals, but such exploration shall not unreasonably interfere with the recreational use of the property by Mr. Haller. In the event that Sundown should undertake exploration of oil, gas and minerals on the relevant property or lease the property for that purpose, the following limitations will apply. Sundown must first attempt to utilize directional drilling. If, despite good faith efforts, directional drilling is not feasible, then to ensure that the location selected for drilling activity on the leased property is the location that interferes the least with the recreational

use of the property the following shall apply. Each party shall designate an arbitrator. Once selected, those arbitrators acting jointly shall designate a third arbitrator to select the location of any drilling activity with the goal of selecting the location that least interferes with the recreational use of the property. Also, in the event there is a dispute over other activity in connection with the exploration for oil, gas and mineral operations, i.e., such as seismic work, the location thereof shall be determined in the same manner as the location of a drilling site.

Moreover, in the event that Sundown has to access the leased property for a purpose related to the exploration of oil, gas, or minerals, other than on the right of ways described in the settlement agreement, Sundown shall give Mr. Haller 48 hours notice and state the specific purposed for entering the property subject to the recreational lease.

C.  Removal of the Loading Platform, Fence, and Lights at the Dock

This dispute will have practical implications only in the event that Haller submits the winning bid for Tracts 1 and 2. Article 462 of the Louisiana Civil Code provides that "[t]racts of land, with their component parts, are immovable. The Civil Code further provides that "[t]hings incorporated into a tract of land, a building, or other constructions, so as to become an integral part of it, such as building materials are its component parts." La. Civ. C. art. 465. Therefore, if the platform, lights and other structures are incorporated into the tract of land, i.e, attached to the property by any means, than those items are component parts of the land and therefore immovables and are not subject to removal, except by the owner of the property.

V.  Permits

The parties agree that an implicit provision of the settlement agreement is that Sundown is obligated to obtain all necessary permits to construct the right-of-way. Apparently out of an

abundance of caution, Haller seeks an order requiring that it be provided with a copy of Sundown's permit applications and the permits obtained by Sundown. Haller acknowledges in its "Memorandum in Opposition to Sundown's Motion to Enforce Settlement and in Support of Defendant's Motion to Enforce Settlement" that both applications for permits and the permits themselves are public records. Doc. 199, p. 20, n. 7. Therefore, to the extent that the permit applications and the permits are public records, Haller has access to them and there is no need for Sundown to provide Haller with copies of the permit applications and the permits. If the permit applications and the permits are not public records, the Court discerns no valid basis for requiring that Sundown provide Haller with a copy of the permit applications and the permits.

VI.  Timing of Payments for Construction Costs

Pursuant to the settlement agreement, Mr. Haller may be responsible for paying a designated portion of the construction costs for the road. Sundown urges that Mr. Haller should make the necessary payment within a reasonable time (seven to fifteen days) after receipt of the cost estimates while Mr. Haller contends that he should pay his portion of the road construction costs upon the actual construction of the road. Common sense and good business practice suggest that Mr. Haller should pay for his portion of the construction costs within a reasonable time of Sundown being billed for those construction costs. Therefore, it is ordered that Mr. Haller shall pay his share of the construction costs within ten (10) days of Sundown being billed for those construction costs.

VI.  Bohemia Communication Tower Lease

Currently Haller has rights under a lease of the Bohemia Communications Tower which is apparently on land subject to the auction. Mr. Haller asserts that should Sundown be the high bidder at the auction of Tracts 1 and 2, that Sundown's ownership of that property should be subject to

Haller's rights under the Bohemia Communications Tower lease. Under Louisiana law

> [a]nyone who acquires immovable property in this state, whether by sale, sheriff's sale, giving in payment or in any other manner, which property is subject to a recorded lease agreement that is not divested by the acquisition, shall take the property subject to all of the provisions of the lease . . . provided that the lease was recorded prior to the recordation of the document which establishes the rights of the person who acquires the property.

La. Rev. Stat. 9:2721 C. There is nothing in the settlement agreement which alters this well established statement of law. Therefore, if Sundown acquires Tracts 1 and 2 in the auction and the Bohemia Communications Tower is located on Tract 1 or 2, and the Bohemia Communications Tower lease is not recorded in the appropriate public record then Sundown's ownership of the property will not be subject to Haller's rights under the Bohemia Communications Tower lease.

As detailed herein above, the Court has resolved the disputed issues identified in the motions to enforce settlement. However, the parties may, by mutual consent, deviate from or change any of the rulings set forth herein.

New Orleans, Louisiana, this 24th day of April, 2012.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE