UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SUNDOWN ENERGY, L.P. | CIVIL ACTION |
| VERSUS | NO. 10-4354 |
| STEVEN G. HALLER. MARY ANN TABONY MEYERS, SUSAN ALICE TABONY BECNEL, LAWRENCE M. TABONY , JR, AND FLASH GAS & OIL SOUTHWEST, INC. | SECTION "K"(2) |

## ORDER AND OPINION

Before the Court is the "Motion to Stay Pending Appeal" filed on behalf of plaintiff Sundown Energy, L.P. ("Sundown") (Doc. 230). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies the motion.

The Court has previously set forth the background of this case in the Order and Opinion denying the "Motion for Partial Summary Judgment" filed on behalf defendants Steven G. Haller and Flash Gas & Oil Southwest, Inc. and the "Motion in Limine" filed on behalf of plaintiff Sundown Energy, LP (Doc. 158) as well as in the Order and Opinion granting in part and denying in part the "Cross Motion to Enforce Settlement" filed on behalf of Sundown and the "Motion to Enforce Settlement" filed on behalf of defendants (Doc. 200). Therefore, only the facts relevant to this motion will be set forth herein.

On March 5, 2012, the day the trial of this matter was scheduled to commence, the parties reached a settlement of the claims in this suit as well as the claim in a related state court suit. The parties placed the general terms of the settlement agreement on the record. The settlement agreement placed on the record provided that "[w]ithin 30 days of executing the documents, we would –the parties would bid against each other in a mandatory buy/sell to purchase the other's co-ownership

interest in Tracts 1 and 2 with the high bidder paying its bid price to purchase the other's interest in both tracts."  Doc. 192, p. 9.  The parties requested, and the Court agreed, to retain jurisdiction to adjudicate any disputes arising from the enforcement of the agreement or the interpretation of the agreement.  In the course of drafting the actual settlement documents, a number of disputes arose concerning:

- how to disburse the proceeds of the auction;
- the location and duration of the right of way given by Haller to Sundown;
- Sundown's right to use the dock after completion of the permanent road in the event that Mr. Haller prevailed in the auction for Tracts 1 and 2;
- issues related to the recreational lease granted by Sundown to Mr. Haller;
- issues related to permits to construct the right-of-way;
- the timing and payment for construction costs for the permanent road; and
- the Bohemia Communication Tower lease.

The Court resolved those disputed issues in an Order and Opinion entered April 24, 2012 (Doc. 200).  Thereafter, Magistrate Judge Knowles conducted the auction for Tracts 1 and 2.  Mr. Haller submitted the highest bid for the property, i.e., $1,500,000.00.  Following the auction, Magistrate Judge Knowles recommended, based on his conclusion that there was no dispute as to the ownership interests of the parties, that the auction proceeds be distributed to the co-owners in proportion to their shares (Doc. 216). Sundown filed objections to Magistrate Judge Knowles's Report and Recommendation, including:

> 2. The Magistrate Judge did not hold "the auction pursuant to the terms of the settlement agreement of the parties read into the record before the District Court on March 5, 2012," because the agreement requires that "the high bidder [pay] its bid price to purchase the other's interest in both tracts"; and
> 3. The Magistrate Judge had discretion to divide the proceeds as proposed by Mr. Haller only if the ownership interest were

> undisputed, and because there was a dispute as to the ownership interests as to Tract 1, the Magistrate Judge lacked discretion to divide the proceeds as proposed by Mr. Haller.

Doc. 218, p.2. This Court overruled Sundown's objections to the Report and Recommendation and ordered that the proceeds of the auction be disbursed as set forth in the Report and Recommendation, i.e., distributed to the co-owners of the tracts in proportion to their ownership interests. Doc. 227. The Court entered judgment that "the proceeds of the August 21, 2012 auction in the amount of $1,500,000.00 be disbursed to the co-owners of the tracts in proportion to their ownership interests. Defendant Steven G. Haller shall retain $865,000.00 of the $1,500.000.00. and plaintiff Sundown Energy, LP shall receive the remaining $634,500.00." Doc. 228. The Court further ordered "that the parties shall comply with the remaining terms of the settlement agreement entered into on March 5, 2012." Id.

Sundown appealed the judgment, the Court's adoption of the Magistrate Judge's Report and Recommendation, and the Order and Opinion entered April 24, 2013, granting in part and denying in part plaintiff's "Cross Motion to Enforce Settlement" and defendants "Motion to Enforce Settlement." Sundown's appeal encompassed a number of issues, including whether the settlement agreement authorizes the distribution of the auction proceeds to the co-owners in proportion to their shares or otherwise allows the Magistrate Judge to divide the proceeds. However, the appeal does not seek to vitiate the auction itself.

Sundown moves the Court for an order staying the judgment pending resolution of the appeal pursuant to Rule 62(d) of the Federal Rules of Civil Procedure. Alternatively Sundown seeks a discretionary stay urging that it can demonstrate a substantial case on the merits and that the balance of equities weighs heavily in its favor.

Law and Analysis

Rule 62(d) of the Federal Rules of Civil Procedure provides, in pertinent part, that [i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). . . . The stay takes effect when the court approves the bond."[1] Rule 62(d) has been interpreted as "entitl[ing] a party appealing a money judgment to an automatic stay upon posting a supersedeas bond." *Hebert v. Exxon Corporation*, 953 F.2d 936, 938 (5th Cir. 1992). "'The posting of a bond protects the prevailing plaintiff from the risk of a later uncollectible judgment, and compensates him for delay in the entry of a final judgment.'" *Id*. quoting *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). Where the judgment at issue is not a money judgment, the financial protection offered by a supersedeas bond may not protect the appellee. Therefore "[c]ourts have restricted the application of Rule 62(d)'s automatic stay to judgments for money because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment." *Id.*

Sundown is not appealing a money judgment rendered against it. Sundown owes no money under the challenged judgment. Because the judgment does not order Sundown to pay defendant any money, the posting of a supersedeas bond provides no security or protection for defendants. In *Donovan v. Fall River Foundry Co., Inc.*, 696 F.2d 524, 525 (7th Cir. 1982), the issue presented was whether "a party appealing from an order to submit to a government health inspection is entitled to a stay of the order, as a matter of right under Rule 62(d) of the Federal Rules of Civil Procedure,

---

[1] Rule 62(a)(1) and (2) provide that "an interlocutory or final judgment in an action injunction or receivership" or "a judgment or order that directs an accounting in an action for patent infringement" are not automatically stayed after being entered even when appealed "unless the court orders otherwise."

upon filing the supersedeas bond required by the rule." The Seventh Circuit noted that Rule 62(d) struck "an appropriate balance" between the competing interests of the appellant and appellee "by entitling the appellant to a stay but conditioning that right on the posting of a bond." *Id.* at 526. The appellate court then concluded that "this solution makes little sense as applied to an order to do, rather than an order to pay, whether or not the order to do is a conventional injunction[]" and that "[t]he requirement of a bond in Rule 62(d) does not fit a case like this." *Id.*

Nor does Rule 62(d) fit the instant case. Here the judgment involves an "order to do," i.e., auction the property, distribute the proceeds of the auction, and transfer title to the property. Permitting Sundown to stay the judgment by posting a supersedeas bond and thereby providing defendants with a fiscal guarantee does not adequately compensate defendants for the delay in executing the judgment. See *United States v. United States Fishing Vessel Maylin*, 130 F.R.D. 684, 686 (S.D. Fla. 1990).

In the absence of a party being entitled to an automatic stay pursuant to Rule 62(d), a district court has the discretion to grant the appealing party a stay pending appeal. *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011). In analyzing whether a discretionary stay is appropriate, the four-factor test announced in *Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113. 95 L.Ed.2d 724 applies. *Id.* The *Hilton* factors are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. at 776, 107 S.Ct. at 2119. 95 L.Ed.2d 724. This test "must be fully applied except where there is a serious legal issue involved and the balance of equities heavily favors a stay; in those situations, the

movant only needs to present a substantial case on the merits." *Weingarten Realty Investors v. Miller*, 904 F.3d at 910. This case involves the interpretation of a settlement agreement, i.e., a private contract, and the impact of the resolution of issues in the settlement agreement is limited to the parties. The judgment being appealed involves no substantial legal questions applicable to anyone beyond the parties to the settlement agreement. Therefore, all four factors of the *Hilton* test must be examined.

The settlement as read into the record on March 5, 2012, was not a detailed, fully completed agreement between the parties, a fact implicitly acknowledged by the parties on the record. Counsel for plaintiff specifically stated on the record:

> What we'd like to do, Judge, as part of the settlement is to ask Your Honor to enforce any problems that come down the road — no pun intended, Judge, if there were any problems.
>
> So we really want to make sure that the Court understands what the deal is, Judge. And we've done a term sheet, and Mr. McGuire I think is going to read it into the record. And we have a plat that we have put up so that you understand, Your Honor, what the deal is. And, if there's a problem, down the road, fortunately for us, maybe unfortunately for you, Judge, we're going to came [sic] back to you and say this is what the deal is, guys, and this is how its done.

Doc. 190, Page 3. Counsel for defendants then stated "as a point of clarification, the enforceability issue that Your Honor is going to maintain jurisdiction over would also include interpretation of any of the associated settlement documents. So, if we get stuck on a term, we would ask Your Honor to help us resolve that issue." Id. at p. 4. Counsel for plaintiff then added "[a]ll consistent with what the overall deal is, Judge." Additionally, when the Court inquired as to the mechanism of bidding for the property, defense counsel stated "[w]e haven't worked out that level of detail on that yet." Id., p. 10. Considering the incomplete nature of the settlement put on the record and the parties

specific request that the Court "enforce any problems that come down the road" and be responsible for "interpretation of the associated settlement documents" if necessary, the Court finds that Sundown has not made a strong showing that it is likely to succeed on the merits of the appeal which focuses on the Court's interpretation of the settlement agreement.

Nor does the Court conclude that Sundown is likely to be irreparably injured absent a stay. Sundown urges that it would be irreparably injured absent a stay should Mr. Haller sell the property to a good faith purchaser while the appeal is pending. The Court will eliminate that possibility of irreparable injury by ordering Mr. Haller to stipulate, as he has offered to do, that he will not sell any interest in the property which was the subject of the auction until the appeal in this case is resolved. Nor is there any possibility that irreparable injury would result from Sundown's loss of access to the dock on the property. Sundown itself eliminated that possibility by removing the dock.

The third *Hilton* factor to be considered is whether staying the judgment pending appeal would substantially harm Mr. Haller. Throughout the litigation, Mr. Haller has consistently opined that his actions have been motivated by a desire to enjoy his property. A stay would clearly further delay Mr. Haller's uninterrupted enjoyment of his property. At best this factor is neutral.

The final factor to be considered is where the public interest lies. Given the specifics of this litigation, no public interest is affected regardless of whether a stay of the judgment pending appeal is granted. Thus, this is a neutral factor.

Having concluded that Sundown has not made a strong showing that it is likely to succeed on the merits and that Sundown will not be irreparably harmed absent a stay, the Court finds that the balance of the equities weigh in favor of denying Sundown's motion for an order staying the execution of the judgment entered March 11, 2013, until resolution of the pending appeal in this

matter. Accordingly,

**IT IS ORDERED** that not later than **July 1, 2013,** defendant Steven Haller shall file into the record a stipulation that he will not sell any interest in Tract 1 or Tract 2 while the appeal of the judgment entered March 11, 2013 remains pending before the United States Court of Appeals for the Fifth Circuit;

**IT IS FURTHER ORDERED** that the "Motion for Stay Pending Appeal" filed on behalf of plaintiff Sundown Energy, LP is **DENIED.**

New Orleans, Louisiana, this 17th day of June, 2013.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE