UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SUNDOWN ENERGY, L.P.**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 10-4354**

**STEVEN HALLER, MARY ANN
TABONY MEYERS, SUSAN ALICE
TABONY BECNEL, LAWRENCE M.
TABONY, JR. and FLASH GAS & OIL
SOUTHWEST, INC.**                                           **SECTION "K"(3)**

## ORDER & REASONS

Before the Court is a Motion for Stay Pending Appeal (R. Doc. 300) filed by Plaintiff Sundown Energy LP ("Sundown"). Having reviewed the motion, memoranda, record, and relevant law, the Court GRANTS the motion for the reasons herein.

**I. BACKGROUND**

The Court will not reiterate the background of this case, as the background is set forth in previous decisions of this Court in more detail and, more recently, the decision of the United States Court of Appeals for the Fifth Circuit in these proceedings. *See Sundown Energy, L.P. v. Haller,* 773 F.3d 606 (2014). The parties reached a settlement as to this case as well as matters not before this Court and read the terms of their settlement into the record on March 5, 2012. Thereafter, this Court attempted to resolve certain issues not addressed explicitly by the parties' settlement in the enforcement of the settlement. After this Court enforced the settlement agreement, part of which included an auction held on August 21, 2012, Sundown appealed.

On appeal, the Fifth Circuit held that the district court erred "when it interpreted the settlement agreement to include those items not mentioned during the parties' oral recitation of the settlement agreement," and, therefore, the "district court thus enforced a settlement

agreement which differed from the actual agreement read into the record by the parties." *See id.* at 613–614. The Fifth Circuit thus held "that the district court abused its discretion when it enforced the settlement agreement." *Id.* at 614. Although the Fifth Circuit acknowledged that "[w]hen limited to the terms recited to the district court, it is apparent that the settlement agreement does not resolve every dispute which could potentially arise," that "the parties had not agreed on all of the details of the auction," and that "the parties gave the district court the authority to enforce and interpret the settlement agreement," the Fifth Circuit gave no instruction as to how the settlement agreement, including the auction, should be enforced.[1] *See id.* at 613–614. Instead, the Fifth Circuit simply stated that "[t]he district court should have found the settlement agreement to encompass only those matters expressly stated by the parties." *Id.* at 614.

The parties submitted cross-motions to this Court requesting that this Court enforce the settlement agreement pursuant to the Fifth Circuit's opinion. *See* R. Docs. 284 & 287. In those motions, the parties presented an issue based on their interpretation of the Fifth Circuit's opinion. Although Sundown previously argued to the Fifth Circuit that the auction should be reversed,[2] in its motion before this Court Sundown argued that it should receive the amount of the highest bid and enforce the August 21, 2012 auction. *See* R. Doc. 284. Defendants, to the contrary, argued that the auction had been reversed and that a new auction should be held. R. Doc. 287.

On May 13, 2015, this Court issued its Order and Reasons denying Sundown's "Motion to Enforce Settlement Agreement Pursuant to Fifth Circuit Decision" (R. Doc. 284) and granting

---

[1] As Judge Dennis aptly noted in his dissent, Sundown did not explain any other reasonable interpretation of the compromise recited in open court and seems to suggest that the parties agreed to a different auction scenario whereby each party would bid only for the other party's interest in the two tracts of land. *Id.* at 617. Likewise, the Fifth Circuit did not offer any guidance as to how the settlement should be enforced.
[2] "The auction should be voided and a new auction scheduled…" Def. Mem. Opp. 4, R. Doc. 301 (citing Original Brief of Plaintiff-Appellant, Docket No. 13-30294, May 24, 2013, at 51).

2

Defendants' "Cross-Motion to Enforce Settlement Pursuant to Fifth Circuit Decision," (R. Doc. 287). *See* R. Doc. 298.  In that Order, this Court held that the Fifth Circuit's decision did not, as Sundown argued in its motion, enforce the auction that occurred on August 21, 2012, nor did it state that Defendant Haller was required to pay the high bid of $1.5 million dollars to Sundown. This Court's opinion remains that the Fifth Circuit, inferentially, although not explicitly, held that the auction was void. As Defendants argued, this Court found that the Fifth Circuit's opinion necessarily reversed the auction when it reversed the district court's "enforce[ment] of the settlement agreement." Thus, based on the express ruling of the Fifth Circuit, this Court denied Sundown's request and granted the Defendants' Motion to Enforce.  This Court ordered that "there be another auction held in strict accordance with the parties' wishes, that is, the high bidder pay the low bidder the entire amount of the bid." In accordance with this order, this Court also ordered Sundown return the amount of $635,000.00 within five days of that order. Sundown has since appealed this decision.

In the instant Motion, Sundown requests a stay of execution of the Court's most recent Order entered on May 13, 2015, as a matter of right, pursuant to Federal Rule of Civil Procedure Rule 62.  Alternatively, Sundown seeks a discretionary stay. In support, Sundown argues that, in ordering Sundown to return the amount it received pursuant to the distribution of funds after the auction, the Court entered a money judgment and under Rule 62(d) Sundown is entitled to a stay of judgment as a matter of right. Further, Sundown argues that a supersedeas bond is not required in this instance or, alternatively, is waivable, because Mr. Haller is in possession of the property and serves as collateral during the pendency of appeal, obviating the need for the bond's security during the pendency of appeal. Sundown asserts that the supersedeas bond requirement may be waived as Sundown is capable of returning the funds to Mr. Haller pending the resolution of

appeal. Alternatively, Sundown argues that it is entitled to a discretionary stay for the following reasons: (1) Sundown has a substantial case that the binding settlement should be enforced as "expressly stated" with the "high bidder paying its bid price" and its argument on appeal that this Court erred in ordering a new auction be conducted is likely to succeed; (2) Sundown will suffer irreparable injury as the parties' circumstances and needs relative to the use of the property "have significantly changed" and Sundown "has no property to be auctioned "again"; (3) Mr. Haller will not be significantly harmed by the stay as he is the owner of the property and will enjoy all rights to the property; and (4) no adverse public interest will be implicated by the stay as "the granting of the stay would serve the public interest by preventing the potential change in ownership of the property (to Sundown) and subsequent back (to Haller) if the Court's Order is reversed on appeal."

In opposition, Defendants argue that the Order is not a money judgment as it is not solely monetary: it includes an order to conduct a new auction—the order in its entirety is an order "to do" rather than an order "to pay" a sum. Thus, Defendants argue Sundown is not entitled to a stay as a matter of right. Alternatively, if the Court finds that Sundown is entitled to such a stay, the Defendants argue that Sundown must post a supersedeas bond in light of the uncertainty surrounding the parties' respective rights and obligations regarding the property. Defendants argue that the court may fix the "whole amount of the judgment remaining unsatisfied" or up to 1.25 to 1.5 times the amount of the judgment; thus Sundown should be required to post a supersedeas bond of 1.25 to 1.5 times the $635,000.00 judgment. Finally, Defendants argue that Sundown is not entitled to a discretionary stay.

## II.     LEGAL STANDARD

4

"Rule 62(d) has been interpreted as entitling a party appealing a money judgment to an automatic stay upon posting a supersedeas bond." *Bridgefield Cas. Ins. Co. v. River Oaks Mgmt., Inc.*, No. Civ. A 12-2336, 2013 WL 5934434, at *1 (E.D.La. Nov. 4, 2013) (citing *Sundown Energy, L.P. v. Haller,* No. 10–4354, 2013 WL 319968 (E.D.La. June 21, 2013)). Federal Rule of Civil Procedure Rule 62(d) provides:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d). "Courts have restricted the application of Rule 62(d)'s automatic stay to judgments for money because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment." *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992)(citations omitted). "The applicability of Rule 62(d) turns . . . on whether the judgment involved is monetary or nonmonetary." *Id.* That the stay provisions of Rule 62(d) pertain to judgments for money "does not preclude diverse forms of judgment pertaining to monetary responsibility from a stay under Rule 62(d) pending appeal." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 437 (5th Cir. 2001).

Where a Rule 62(d) stay is applicable, the Fifth Circuit has stated the following as to the supersedeas bond requirement:

> If a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure. It is not the burden of the judgment creditor to initiate contrary proof. Such a supersedeas bond is a privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money.

*Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979). The Fifth Circuit has considered the following in fixing the amount of the bond: "the

5

whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay . . ." *Poplar Grove*, 600 F.2d at 1191. To invoke an exception to this general rule requiring the posting of supersedeas bond, the party must either "(1) demonstrate objectively a present financial ability to facilely respond to a money judgment and present a financially secure plan for maintaining that same degree of solvency during the period of the appeal, or (2) demonstrate that the stay applicant's present financial condition is such that the posting of a full bond would impose an undue financial burden." *Asarco LLC v. Americas Mining Corp.*, 419 B.R. 737, 741-42 (S.D. Tex. 2009) (citation and internal quotation marks omitted).

Nonmonetary judgments, on the other hand, are not automatically stayed but may be stayed in the court's discretion. *See Halliburton Energy Servs., Inc. v. NL Indus.,* No. CIV. A. H-05-4160, 2008 WL 2787247, at *4 (S.D.Tex. July 16, 2008). Where courts have faced judgments that did not clearly fall within the "monetary" or "nonmonetary" category, such courts have applied the four-factor standard typically applied to a request to stay an injunction pending appeal or for a discretionary stay generally. *See id.*; *see also United States v. Goltz*, No. CIV.A. SA-06-CA-503X, 2007 WL 295558, at *3 & n.2 (W.D. Tex. Jan. 25, 2007)(applying discretionary stay analysis to IRS foreclosure sale because the court issued an injunction (order of foreclosure and sale) to satisfy a money judgment (delinquent tax liabilities)).[3] In determining whether to grant a stay in its discretion, a court should consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceedings; and (4) [whether] public interest [favors a stay]."

---

[3]*See Donovan v. Fall River Foundry Co., Inc.*, 696 F.2d 524 (7th Cir. 1982) (distinguishing between orders "to do" and orders "to pay" under Rule 62(d), finding that an order directing the company to allow an inspection of a plant for OSHA violations was not susceptible to being secured by a supersedeas bond and thus Rule 62(d) was inapplicable)

6

*Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011)(citations and internal quotation marks omitted).

### III.   DISCUSSION

Although Defendants argue that the Order is non-monetary and any monetary portion along with the order of a new auction creates an order "to do," there appears to be no case law addressing any unique factual circumstances similar to those underlying this matter. The Court cannot ignore the fact that the prior order indeed is, in part, an order "to pay" a certain sum or a money judgment.  However, the remaining portion of the order calls for a new auction to be held. Though matters relating to the monetary judgment may be stayed as a matter of right, and other matters stayed in the court's discretion, the Court finds parsing the order in this manner impracticable for the following reasons.

First, the Court finds that the order to return the $635,000.00 is an order to pay a sum and as such is by definition a monetary judgment. As such, Sundown is entitled to a stay as a matter of right on that portion of the order. Second, the Court does not find that a discretionary stay would be warranted under these circumstances as to the nonmonetary portion of the judgment (i.e., the new auction).  Under the four-factor test, the Court finds that Sundown cannot establish a strong likelihood of success on the merits; thus, the Court finds generally that Sundown is not entitled to a discretionary stay of the auction.  If the Court parses the order in this way, the Court would find itself in the unenviable position of staying one portion of the order (the money judgment) while denying a stay in its discretion as to the nonmonetary portion (the auction). Unlike other cases addressing orders not clearly falling within the monetary or nonmonetary category, the order in this matter cannot be severed so definitively. The order to return the sum

7

of money reflects the intent of returning the parties to status quo prior to the initial 2012 auction and, therefore, must precede any new auction. By allowing a stay as to the monetary portion but allowing the auction to proceed, the Court would necessarily create additional confusion and expense for the parties pending appeal. Thus, the Court finds that Sundown is entitled to a stay as a matter of right as to the entirety of the Court's order of May 13, 2015 under Rule 62(d), and the June 18, 2015 auction shall be indefinitely postponed.

By virtue of the Fifth Circuit's reversing the auction (or enforcement of the settlement), and this Court's Order pursuant to that opinion, it is implicit that the ownership of Tracts 1 and 2 have been returned to the state of ownership prior to the 2012 auction; however, as Sundown notes, ownership interest is not explicitly addressed in this Court's last order. Nevertheless, any issue as to the ownership would not likely have posed any significant issue if the auction would have occurred on June 18th, as scheduled. Because the property ownership remains uncertain as well as the propriety of conducting a new auction, the Court refuses to exercise its discretion to waive the bond requirement or allow substitute security. *See Dillon v. City of Chicago,* 866 F.2d 902, 904-05 (7th Cir.1988) (discussing discretionary waiver of the bond); *see Poplar Grove Planting and Refining Co., Inc.,* 600 F.2d at 1191 (allowing appointment of substitute security). In any event, Sundown has not offered any evidence of its financial security or provided any supporting argument other than a bare assertion in its motion that it will be able to pay $635,000.00 upon the resolution of the pending appeal. Thus, the Court finds that a supersedeas bond shall be posted in the amount of $635,000.00 in order to stay the execution of this Court's May 13, 2015 Order.[4]

---

[4] The Court notes that the amount owed Sundown as specified in the Order after the 2012 auction was $634,500.00. Order, June 25, 2013, R. Doc. 269; *see also* Order, March 11, 2013, R. Doc. 228. However, in Sundown's Motion to Enforce Settlement, the amount referenced, as supported by Sundown's demand letter to Mr. Haller attached as an exhibit to the motion, was $635,000.00. *See* Pl. Mem. Supp. Mot. Exhibit 1, R. Doc. 284-2, at 1 ("to pay Sundown

8

Accordingly,

**IT IS ORDERED** that the Motion to Stay is **GRANTED** upon the Plaintiff Sundown's posting of a supersedeas bond in the amount of $635,000.00 by **June 24, 2015**. Conditioned upon the timely posting of such bond, the execution of the Order of May 13, 2015 is hereby **STAYED**.

New Orleans, Louisiana, this __16th__ day of June, 2015.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**

---

his high bid price of $1,500,000.00 minus the **$635,000** already paid…"). Accordingly, this Court ordered the return of $635,000.00 in its prior Order of May 13, 2015. In this motion, the Court likewise orders the same amount to be posted as a supersedeas bond to secure the entire sum of the judgment, be it $634,500.00 or $635,000.00.

9